[No. 75486-1.   En Banc.]
Argued March 24, 2005.   Decided December 1, 2005.

ROBERT ROBERSON ET AL., *Plaintiffs*, JONATHAN SIMS ET AL.,
*Petitioners*, v. ROBERT PEREZ ET AL., *Defendants*,
DOUGLAS COUNTY, *Respondent*.

34

*John S. Stocks* (of *Van Siclen Stocks & Firkins*) and *Philip J. Buri* (of *Buri Funston, P.L.L.C.*), for petitioners.

*Catherine W. Smith* and *Howard M. Goodfriend* (of *Edwards Sieh Smith & Goodfriend, P.S.*) and *Stanley A. Bastian* (of *Jeffers Danielson Sonn & Aylward, P.S.*), for respondent.

*Bryan P. Harnetiaux* and *Debra L.W. Stephens* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 J.M. JOHNSON, J. — After acquittal on six counts of rape and molestation of a child, Honnah Sims and her husband (Petitioners) successfully sued Douglas County (County) for negligent investigation of child abuse allegations. Petitioners now appeal a Court of Appeals decision reversing their jury award and dismissing their action.

¶2 The primary issues for our consideration are (1) the applicability of the law of the case doctrine to this matter and (2) the scope of an implied cause of action for negligent investigation under chapter 26.44 RCW. We hold that the law of the case doctrine did not preclude successive appellate review of the scope and availability of Petitioners' asserted cause of action in light of intervening, controlling precedent from this court. We further hold that this cause of action does not extend to Petitioners because the County's investigation did not result in a "harmful placement decision" of the child. Accordingly, we affirm.

36

## FACTS

¶3 In early 1995, the city of Wenatchee (City) and Douglas County investigated allegations of child sexual abuse in the much publicized "Wenatchee sex ring." The City's investigation began after a foster child in the home of Wenatchee Police Detective Robert Perez claimed that she and other children had been sexually abused while attending the family's East Wenatchee church.[1] The County then conducted its own independent investigation, initially prompted by reports forwarded to them by Detective Perez.

¶4 Honnah Sims was a Sunday school teacher at the East Wenatchee church. She lived with her husband Jonathan and her 13-year-old son Daniel in Wenatchee. In the spring of 1995, as the investigation into sexual abuse widened, Ms. Sims learned that she was identified in police reports as being among those accused of abusing children. It is not clear from the record, however, whether the County ever investigated Ms. Sims for abusing her son Daniel.

¶5 Ms. Sims feared that her arrest was imminent and that Child Protective Services (CPS)[2] would place Daniel into foster care. Accordingly, in April 1995, the Simses sent Daniel to live with a grandparent in Kansas. The Simses also relinquished guardianship of Daniel to the same grandparent.

¶6 Ms. Sims was arrested on May 22, 1995. She was charged with six counts of rape and molestation of two children. Neither of the alleged victims was her son Daniel. In late July, approximately two months after her arrest, a jury acquitted Ms. Sims of all charges. Daniel returned in November of that same year, after having been separated from his family for approximately seven months. Daniel

---

[1] The Columbia River separates Chelan and Douglas counties, which contain the cities of Wenatchee and East Wenatchee, respectively.

[2] CPS is a division of state Department of Social and Health Services (DSHS). *See* RCW 26.44.020(16).

then made himself available for questioning regarding his own observations of alleged sexual activities at the church.

## PROCEDURAL HISTORY

### A. King County Superior Court

¶7 Subsequent to acquittal on the criminal charges, Ms. Sims and other similarly situated parents and their minor children commenced an action for damages against the city of Wenatchee, Douglas County, and additional defendants. The asserted claims included negligent investigation and negligent supervision, among others.[3]

¶8 After the court dismissed the negligent investigation and supervision claims under CR 12(b)(6), there was a trial on the remaining theories. The jury returned a verdict for the defendants on all claims. The plaintiffs appealed the dismissal of the negligent investigation and supervision claims.

### B. Court of Appeals, Division One

¶9 Division One reversed the dismissal of the negligent investigation claim, recognizing negligent investigation of child abuse allegations by law enforcement as a basis of tort liability for the first time in the state of Washington.[4] *See Rodriguez v. Perez*, 99 Wn. App. 439, 451-52, 994 P.2d 874, *review denied*, 141 Wn.2d 1020, 10 P.3d 1073 (2000). The

---

[3] Other claims included false arrest, false imprisonment, malicious prosecution, and malicious interference with the parent-child relationship.

[4] Approximately four months later, we expressly recognized an implied cause of action for negligent investigation of child abuse allegations by DSHS under chapter 26.44 RCW. *See Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 1 P.3d 1148 (2000). Prior to *Tyner*, we had implicitly approved an analogous claim against DSHS. *See Babcock v. State*, 116 Wn.2d 596, 610, 809 P.2d 143 (1991). All subsequent appellate cases that include claims for negligent investigation under chapter 26.44 RCW appear to have been asserted solely against DSHS and not law enforcement. *See, e.g., Petcu v. State*, 121 Wn. App. 36, 86 P.3d 1234, *review denied*, 152 Wn.2d 1033, 103 P.3d 201 (2004); *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wn. App. 569, 950 P.2d 20, *review denied*, 135 Wn.2d 1015, 960 P.2d 937 (1998); *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 930 P.2d 958, *review denied*, 132 Wn.2d 1010, 940 P.2d 655 (1997); *Lesley v. Dep't of Soc. & Health Servs.*, 83 Wn. App. 263, 921 P.2d 1066 (1996), *review denied*, 131 Wn.2d 1026, 939 P.2d 216 (1997).

court concluded that "both the children who are suspected of being abused and their parents comprise a protected class under chapter 26.44 RCW and may bring action for negligent investigation" and remanded for trial. *Id.* at 445. The City and County sought our review.

### C. Washington State Supreme Court

¶10 We denied review. *Rodriguez v. Perez,* noted at 141 Wn.2d 1020, 10 P.3d 1073 (2000).

### D. Spokane County Superior Court

¶11 On remand, the King County Superior Court ordered a change of venue to Spokane County Superior Court. At the conclusion of the trial in that court, the jury returned a verdict for negligent investigation against the County, awarding Ms. Sims $2,000,000, her husband Jonathan $1,000,000, and nothing to her son Daniel. The County appealed.[5]

### E. Court of Appeals, Division Three

¶12 On appeal, the County argued for the first time that the cause of action under chapter 26.44 RCW did not extend to the Simses. In the intervening period between the trial in Spokane County Superior Court and appellate oral argument, we issued our opinion in *M.W. v. Department of Social & Health Services,* 149 Wn.2d 589, 70 P.3d 954 (2003). *M.W.* clarified the scope of potential claims for negligent investigation under chapter 26.44 RCW, recognizing claims "only when DSHS [Department of Social and Health Services] conducts a biased or faulty investigation that leads to a harmful placement decision." *Id.* at 591.

¶13 Based in part on this new authority, the County argued that the Simses could not maintain a cause of action for negligent investigation because (1) Ms. Sims was not

---

[5] After trial, monetary sanctions were imposed against the City for discovery violations and the jury's verdict in the City's favor was vacated. The Court of Appeals subsequently affirmed the sanctions. *See Roberson v. Perez,* 123 Wn. App. 320, 96 P.3d 420 (2004). The City is not a party to this appeal.

investigated by the County for abusing her son Daniel and (2) the Simses avoided any possible "harmful placement decision" by sending Daniel to live with a grandparent in Kansas.

¶14 The appeals court agreed, declined to follow as law of the case the prior Division One opinion that had recognized the Simses' cause of action, and remanded for trial. *Roberson v. Perez*, 119 Wn. App. 928, 934, 83 P.3d 1026 (2004). Citing this court's *M.W.* opinion, the Court of Appeals determined that the Simses could not maintain a cause of action because "their child was not the subject of a negligent criminal investigation that led to a harmful placement decision." *Id.* Accordingly, the court reversed the jury award and dismissed the action. *Id.* The Simses appealed, and we granted review, 153 Wn.2d 1001, 103 P.3d 1247 (2005).

## ANALYSIS

¶15 Petitioners allege that the Court of Appeals committed several procedural errors by reaching the merits of the County's arguments regarding the scope and availability of the Simses' cause of action for negligent investigation. Petitioners allege that the Court of Appeals erred in reviewing this issue because (1) it was not raised in the trial court below and (2) various formulations of the law of the case doctrine also prevent relitigation of the issue. Because these procedural issues are potentially dispositive, we address them at the outset.

A. Issues Raised for the First Time on Appeal

¶16 In general, issues not raised in the trial court may not be raised on appeal. *See* RAP 2.5(a) (an "appellate court may refuse to review any claim of error which was not raised in the trial court"). However, by using the term "may," RAP 2.5(a) is written in discretionary, rather than mandatory, terms. *See State v. Ford*, 137 Wn.2d 472, 477, 484-85, 973 P.2d 452 (1999).

¶17 In addition to its discretionary nature, RAP 2.5(a) contains several express exceptions from its general prohibition against raising new issues on appeal, including the "failure to establish facts upon which relief can be granted." This exception is fitting inasmuch as "[a]ppeal is the first time sufficiency of evidence may realistically be raised." *State v. Hickman*, 135 Wn.2d 97, 103 n.3, 954 P.2d 900 (1998). For purposes of RAP 2.5(a), the terms "failure to establish facts upon which relief can be granted" and "failure to state a claim" are largely interchangeable. *See* 1 WASH. COURT RULES ANN. RAP 2.5 cmt. (a) at 640 (2d ed. 2004) ("Exception (2) uses the phrase 'failure to establish facts' rather than the traditional 'failure to state a claim.' The former phrase more accurately expresses the meaning of the rule in modern practice.").

¶18 The Court of Appeals held that the County could argue the failure to establish facts upon which relief can be granted for the first time on appeal. We agree and have previously so held:

> In our opinion, this particular statutory limitation on the class of persons entitled to a civil cause of action for age discrimination operates to define the specific facts upon which relief may be predicated. A party may raise failure to establish facts upon which relief can be granted for the first time in the appellate court. RAP 2.5(a)(2). Respondent is thus not precluded from raising appellant's failure to establish he is within the protected class.

*Gross v. City of Lynnwood*, 90 Wn.2d 395, 400, 583 P.2d 1197 (1978). We have consistently stated that a new issue can be raised on appeal " 'when the question raised affects the right to maintain the action.' " *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990) (quoting *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 621, 465 P.2d 657 (1970)); *see also Jones v. Stebbins*, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993).

¶19 Given the discretionary nature of RAP 2.5(a) and its express exception for raising failure to establish facts upon which relief can be granted, we conclude that the Court of

Appeals did not err in reaching the County's argument regarding the scope and availability of Petitioners' cause of action.

## B. Law of the Case Doctrine

¶20 Law of the case is a doctrine that derives from both RAP 2.5(c)(2) and common law. This multifaceted doctrine means different things in different circumstances, *Lutheran Day Care v. Snohomish County,* 119 Wn.2d 91, 113, 829 P.2d 746 (1992), and is often confused with other closely related doctrines, including collateral estoppel,[6] res judicata,[7] and stare decisis.[8]

¶21 In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation. *Id.* (citing 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 55-56 (4th ed. 1986)). In addition, law of the case also refers to the principle that jury instructions that are not objected to are treated as the properly applicable law for purposes of appeal. *Hickman,* 135 Wn.2d at 101-02. In all of its various formulations the doctrine seeks to promote finality and efficiency in the judicial process. *See* 5 AM. JUR. 2D *Appellate Review* § 605 (1995).

¶22 In 1976, RAP 2.5(c)(2) codified certain restrictions on the law of the case doctrine:

---

[6] Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one. BLACK'S LAW DICTIONARY 279 (8th ed. 2004). *See also Clark v. Baines,* 150 Wn.2d 905, 912-13, 84 P.3d 245 (2004).

[7] Res judicata, or claim preclusion, prevents the same parties from litigating a second lawsuit on the same claim or any other claim arising from the same transaction or series of transactions that could have been, but was not, raised in the first suit. BLACK'S LAW DICTIONARY 1336-37 (8th ed. 2004). *See also In re Estate of Black,* 153 Wn.2d 152, 170, 102 P.3d 796 (2004).

[8] Stare decisis, the doctrine of precedent, generally dictates that a court follow earlier judicial decisions when the same points of law arise again in litigation. BLACK'S LAW DICTIONARY 1443 (8th ed. 2004). *See also In re Pers. Restraint of LaChapelle,* 153 Wn.2d 1, 5, 100 P.3d 805 (2004).

(2) *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

86 Wn.2d 1152. By using the term "may," RAP 2.5(c)(2) is written in discretionary, rather than mandatory, terms. *See Folsom v. County of Spokane,* 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). The plain language of the rule affords appellate courts discretion in its application. RAP 2.5(c)(2) codifies at least two historically recognized exceptions to the law of the case doctrine that operate independently.

¶23 First, application of the doctrine may be avoided where the prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice to one party. *See, e.g., First Small Bus. Inv. Co. of Cal. v. Intercapital Corp. of Or.,* 108 Wn.2d 324, 333, 738 P.2d 263 (1987). This commonsense formulation of the doctrine assures that an appellate court is not obliged to perpetuate its own error.

¶24 Second, application of the doctrine may also be avoided where there has been an intervening change in controlling precedent between trial and appeal. *See* RAP 2.5(c)(2) (authorizing appellate courts to review prior decisions on the basis of the law "at the time of the later review"). This exception to the law of the case doctrine also comports with federal law. 1B JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.404 1, at II-6 through -II-7 (2d ed. 1996) ("It is clear, for example, that a decision of the Supreme Court directly in point, irreconcilable with the decision on the first appeal, and rendered in the interim, *must* be followed on the second appeal, despite the doctrine of the law of the case.") (footnote omitted); *cf. Crane Co. v. Am. Standard, Inc.,* 603 F.2d 244, 249 (2d Cir. 1979) (concluding that the law of the case did not preclude trial court reconsideration of whether plaintiff had a cause of action when reexamination is appropriate in light of an intervening United States Su-

preme Court decision). An appellate court's discretion to disregard the law of the case doctrine is at its apex when there has been a subsequent change in controlling precedent on appeal.

¶25 Petitioners argue that both of the above formulations of law of the case doctrine should have prevented the County from relitigating on appeal the scope and availability of Petitioners' cause of action for negligent investigation. First, Petitioners argue that the Division One opinion could not be set aside absent a finding by the Court of Appeals that the previous decision was erroneous and that the erroneous decision would work a manifest injustice to one party. However, no such finding is required where reconsideration is prompted by intervening, controlling precedent from this court. The instant case squarely fits within this exception. Prior to the issuance of Division Three's opinion, we issued our controlling opinion in *M.W.*, 149 Wn.2d 589. As explained further below, our decision in *M.W.* compelled the dismissal of Petitioners' claim for negligent investigation under chapter 26.44 RCW.

¶26 Petitioners also assert that jury instructions become law of the case and that the County is barred from rearguing the cause of action as defined in the instructions. However, if jury instructions were controlling as Petitioners assert, a reviewing court could never review a case based on the law as it exists at the time of appeal. Moreover, our case law reinforces the principle that even failure to object to jury instructions is of no consequence where the contention affects the right to maintain a cause of action.

> It is the approved rule in this state that the parties are bound by the law laid down by the court in its instructions where, as here, the charge is approved by counsel for each party, no objections or exceptions thereto having been made at any stage. . . . *This rule does not apply if the record or evidence conclusively shows that the party in whose favor the verdict is rendered is not entitled to recover. No man should be allowed to recover in any case unless there is evidence to support his contention.*

*Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638, 640-41 (1948) (emphasis added).

¶27 Rigid adherence to the law of the case doctrine where the issue on appeal involves the threshold determination of whether plaintiff possesses a cause of action may actually violate the very purpose for which the law of the case doctrine exists—promoting finality and efficiency in the judicial process. The determination that a plaintiff cannot maintain a cause of action conserves judicial resources for those whose grievances are properly before the courts. Such a ruling also prospectively precludes suits by potential litigants with similar claims.

¶28 We conclude that the Court of Appeals acted within its discretion when it declined to invoke the law of the case doctrine and reconsidered the prior Division One opinion in light of intervening, controlling precedent from this court. We now address whether Petitioners fall within the scope of cognizable claims under chapter 26.44 RCW.

## C. Scope of Cause of Action for Negligent Investigation

¶29 We have previously recognized an implied cause of action against DSHS for negligent investigation of child abuse allegations under chapter 26.44 RCW.[9] *See Tyner v.*

---

[9] RCW 26.44.010 sets forth the purposes of the chapter and provides in relevant part:

The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred, and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. . . .

The provision that we have determined is actionable in negligence, former RCW 26.44.050 (1987), provides in relevant part:

Upon the receipt of a report concerning the possible occurrence of abuse or neglect, it shall be the duty of the law enforcement agency or the department of social and health services to investigate and provide the protective services section with a report in accordance with the provision of chapter 74.13 RCW, and where necessary to refer such report to the court. . . .

*Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 79-81, 1 P.3d 1148 (2000).[10] In *Tyner*, a father was accused of abusing his children and was separated from them for several months during the pendency of a CPS investigation and resulting dependency proceedings. *Id.* at 71-75. After the dismissal of the dependency petition, the father sued for negligent investigation under RCW 26.44.050. *Id.* at 75-56. The parties agreed that RCW 26.44.050 created a duty to a child victim when investigating child abuse but disputed whether that duty extended to the child's parents. *Id.* at 77. We noted that the statute has two central purposes—to protect children and to preserve the integrity of the family. *Id.* at 80. Accordingly, we concluded that the statute provides a cause of action for both parents and their children. *Id.*

¶30 In *M.W.*, 149 Wn.2d 589, we subsequently clarified the scope of the cause of action established in *Tyner*. A child allegedly suffered posttraumatic stress disorder after undergoing a vaginal examination by untrained DSHS workers investigating child abuse allegations. *Id.* at 592. The plaintiffs argued that the cause of action encompassed all physical or emotional injuries suffered by the child as a result of a negligent investigation. *Id.* at 595. In rejecting this contention, we held that negligent investigation claims were cognizable "only when DSHS conducts a biased or faulty investigation that leads to a harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home." *Id.* at 591.

The County's investigation of Ms. Sims began in March of 1995. Although RCW 26.44.050 was amended in 1999 to slightly reword the duty of law enforcement and DSHS, the amendment does not materially alter the scope of the duty.

[10] For purposes of this opinion, we assume without deciding that the same cause of action may also be maintained against law enforcement. This issue was presented for our review in the County's original petition for review following the Simses' Division One appeal. Although we denied the petition, our denial imports no expression of opinion upon the merits of the issues presented therein. Because the parties do not renew this contention in the current appeal, we do not reach the issue.

¶31 Based on our decisions in *Tyner* and *M.W.*, the County argued on appeal that the Simses do not have a cause of action for negligent investigation because (1) Ms. Sims was not investigated by the County for abusing her son Daniel and (2) the Simses avoided any possible "harmful placement decision" by sending Daniel to live with a grandparent in Kansas. Although the parties dispute whether Ms. Sims was ever investigated by the County for abusing her own son, we need not determine whether this is necessary for the cause of action. Our interpretation of the statute in *M.W.* unequivocally requires that the negligent investigation to be actionable must lead to a "harmful placement decision." *Id.*

¶32 Here, the Simses voluntarily relinquished guardianship of Daniel to his grandmother and sent him to live with her in Kansas after learning that Ms. Sims was among those accused of abusing children. In their briefs, the Simses described this sequence of events as a "preemptive move," tantamount to "constructive removal." Br. of Pet'rs at 28. We reject the contention that this supports a cause of action under chapter 26.44 RCW.

¶33 Extending the cause of action for negligent investigation to include so-called "constructive placement" decisions would be problematic and is beyond the statute. First, any "harm" resulting from the investigation would be purely speculative in nature. It cannot be readily determined what placement action, if any, DSHS or law enforcement might have taken, after investigation.

¶34 Second, claimants asserting "constructive placement" could largely control the extent of their damages. Because damages reflect disruption to the family unit, the length of such a disruption is proportionate to the damage. Here, for example, the Simses determined the length of time that Daniel was absent from their home. Daniel's absence occurred approximately one month before Ms. Sims was arrested and his return was delayed until approximately four months after the acquittal of Ms. Sims. Notably, the jury awarded no damages to Daniel. In addition,

disruption to the family unit could be minimized. Here, for example, Daniel could have continued to live at home with his father during Ms. Sims' incarceration. Mr. Sims was never accused of abusing Daniel or any other children.

¶35 Finally, extending the cause of action for negligent investigation to include constructive placement decisions could encourage individuals to frustrate investigations. Ms. Sims testified, for example, that part of her decision to send Daniel away was to prevent further investigation. Verbatim Report of Proceedings (July 12, 2001) at 826 ("I did not want [Daniel] to testify against his parents like all the other kids were being made to do.").

¶36 We conclude as a matter of law that the County's investigation did not result in a harmful placement decision and affirm the Court of Appeals' dismissal of the Simses' claims. The Simses' testimony conclusively established that Daniel was sent from their home, and from the state, through their voluntary acts. Accordingly, no amount of evidence can be produced sufficient to meet the legal standard of a harmful placement decision.[11] For this reason, we also decline Petitioners' request for a remand. Suppl. Br. of Pet'rs at 22.

## CONCLUSION

¶37 No principle of the law of the case doctrine requires upholding a trial court's verdict where intervening, controlling precedent from this court demonstrates that the plaintiff is not entitled to recover. Because Petitioners have no cause of action in the aftermath of this court's *M.W.*

---

[11] Pursuant to RAP 9.11, Petitioners have moved to supplement the record with evidence presumably to demonstrate a harmful placement decision by the County. The testimony at trial conclusively established that the Simses voluntarily decided to send Daniel away, the County was aware of CPS efforts to retrieve Daniel from Kansas, and the County assisted the CPS efforts by calling law enforcement in Kansas to locate Daniel. The supplemental evidence submitted for our consideration is consistent with this testimony, and the Court of Appeals already denied multiple motions to supplement the record with this same evidence. We likewise deny the motion to supplement the record.

decision, Division Three appropriately reconsidered the prior Division One decision.

¶38 The record demonstrates that the County's negligence did not result in a "harmful placement decision." We decline Petitioners' request to enlarge the negligent investigation cause of action under chapter 26.44 RCW to include speculative harms argued as "constructive placement." The Court of Appeals is affirmed.

C. JOHNSON, MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶39 SANDERS, J. (dissenting) — In the midst of investigations, allegations of sexual abuse, and arrests surrounding the Wenatchee sex ring cases in the mid-1990s, Jonathan and Honnah Sims sent their son Danny to live with his grandmother in Kansas. Knowing she was the subject of investigation, Honnah reasonably feared Danny would be taken, as had the children of other parents accused of sexual abuse.

¶40 Shortly after Danny's departure Honnah was in fact arrested, but her trial resulted in acquittal. The Simses and other victims of Douglas County's careless police work sued the county, amongst others, for negligent investigation. The jury returned a verdict in favor of the Simses and against the county for $3,000,000.[12]

¶41 On appeal the county argued for the first time the Simses had not proved Danny was either the subject of investigation or of a "harmful placement decision." Agreeing these new elements were not proved, the Court of Appeals reversed the judgment, ordering the case dismissed. Our majority affirms, holding Division Three was not bound by the law of the case and holding further, as a matter of law, the Simses cannot prove a harmful placement decision. I disagree.

---

[12] I am aware of the complicated procedural history of this case, and I deliberately shortened it here for reasons of clarity.

I. Unexcepted Jury Instructions Are the Law of the Case

¶42 Law of the case is a broad rubric referring to three distinct doctrines. *See Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992). First, appellate court decisions bind the trial court on remand. *Id.* Second, jury instructions not objected to become the properly applicable law on appeal. *Id.* Finally, a second appellate court will not revisit the holdings of the first appellate court in the same case. *Id.* But "[t]his final use of the term has been limited by case law and rules of court." *Id.* (citing *Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988); RAP 2.5(c)).

¶43 The second proposition is of interest here. "[J]ury instructions not objected to become the law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (citing *State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968)). This rule is deeply rooted in this state, being "so well established that the assembling of the cases is unnecessary." *Peters v. Union Gap Irrigation Dist.*, 98 Wash. 412, 413, 167 P. 1085 (1917). However, an exception exists if the record shows "the party in whose favor the verdict is rendered is not entitled to recover. No man should be allowed to recover in any case unless there is evidence to support his contention." *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948).

¶44 The majority errs by applying restrictions on the law of the case doctrine to the jury instruction prong that are properly applied only to the third prong, namely, a second appellate court reviewing a previous appellate decision in the same case. *See Lutheran Day Care*, 119 Wn.2d at 113 ("This final use of the term has been limited by case law and rules of court."). The "clearly erroneous/manifest injustice" standard for review of a previous opinion in the same case can be applied only when there is a previous opinion. *See* majority at 42 (citing *First Small Bus. Inv. Co. of Cal. v. Intercapital Corp. of Or.*, 108 Wn.2d 324, 333, 738 P.2d 263 (1987)). Likewise, the intervening change in case law between trial and appeal exception, *see* majority at 42-43, applies

only in the same context, *see* RAP 2.5(c)(2). Neither of these exceptions applies to jury instructions.

¶45 Without citation the majority opines: "[I]f jury instructions were controlling as Petitioners assert, a reviewing court could never review a case based on the law as it exists at the time of appeal." Majority at 43. This statement is manifestly untrue. Only in cases where neither party objects to the jury instructions, likely a small percentage of such cases, and where intervening precedent changes the law, a smaller percentage still, will this issue arise. In all other cases the new law is applicable. The present case simply requires application of the jury instructions component of the law of the case doctrine. But the majority violates the well-settled doctrine that requires a party to except to an instruction to preserve the alleged error for appeal. *Lutheran Day Care*, 119 Wn.2d at 113; RAP 2.5(a).

¶46 Nor does the only possible exception, insufficient evidence to support the claim, apply here because the Simses proved every element of the tort as defined by the jury instructions, which, without objection, necessarily state the applicable law.[13] *Contra* majority at 43. It is nonsensical to scuttle the Simses' claim for failure to prove at trial elements not alleged until the appeal and extraneous to unexcepted jury instructions.

II. The County Subjected the Simses to a Harmful Placement Decision

¶47 RCW 26.44.050 has two purposes: protection of children and the preservation of the integrity of the family. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 80, 1 P.3d 1148 (2000). Three years after *Tyner* recognized the

---

[13] The jury instruction listed three elements for establishing the county's investigation was negligent:

First, that one or more of the defendants acted, or failed to act, in a negligent manner when investigating the allegations of child sex abuse.

Second, that the plaintiffs were injured or harmed; and,

Third, that the negligence of one or more of the defendants was a proximate cause of the injury to plaintiffs.

Clerk's Papers at 364 (Instruction 12).

implied cause of action under chapter 26.44 RCW for negligent investigation of child abuse, *M.W. v. Department of Social & Health Services*, 149 Wn.2d 589, 70 P.3d 954 (2003), restricted the potential claims to only those resulting in a "harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home."[14] *Id.* at 591.

¶48 Here the majority erroneously holds as a matter of law the Simses cannot prove a harmful placement decision simply because Danny was "voluntarily" removed from the jurisdiction. *See* majority at 47. This conclusion is false, and it undermines one of the stated purposes of the statute: the protection of the integrity of the family, *Tyner,* 141 Wn.2d at 80.

¶49 The day of Honnah Sims' arrest Child Protective Services (CPS) filed a dependency petition concerning Danny, with an accompanying motion for a court order to take him into custody, after Douglas County Sheriff's Office requested CPS assistance in placing Danny in protective custody. Suppl. Br. of Pet'rs (Van Siclen Decl.), App. B.[15] This *was* a "placement decision." The petition identified Danny as "abused or neglected as defined in chapter 26.44 RCW" and alleged Danny "had no parent, guardian or custodian capable of adequately caring for [him]." *Id.* The order to take Danny into custody and place him in shelter care was issued the following day. Subsequently, the county

---

[14] In my view, the *M.W.* majority incorrectly relied on the factual context of the negligent investigation cases decided prior to *M.W.* to artificially limit governmental liability to the three harmful placement decision categories. "Typically the principle upon which tort liability is imposed is more general than any specific facts which may fall within that principle." *M.W.*, 149 Wn.2d at 605 (Sanders, J., dissenting). The only limitation on recovery under chapter 26.44 RCW should be absence of direct and proximate injury to the child or the integrity of the family caused by negligent investigation. *Id.*

[15] The declaration of Robert Van Siclen and its appendixes were proffered by the Simses in their RAP 9.11 motion to supplement the record. The majority denies this motion. The Simses did not introduce this evidence at trial for a simple reason: it did not become relevant until the county alleged a "harmful placement decision" as an element of a negligent prosecution claim in its appeal. Because it meets the criteria of RAP 9.11, we should consider this evidence in our resolution of this case.

assisted CPS' efforts to secure an order instructing Danny's grandmother to turn him over to the authorities. But happily these attempts proved unsuccessful. Danny returned home after Honnah Sims was acquitted of all charges. Yes, the "placement decision" was unexecuted because the parents acted in a timely fashion to save their child from the state, but there was a placement decision nonetheless and harmful consequences.

¶50 Rejecting the Simses' placement argument, the majority cites concerns regarding the speculative nature of the alleged harm, the claimants' ability to control the extent of their damages, and potential incentives to frustrate investigations. *See* majority at 46. However, these are questions for the jury—not this court.

III. Conclusion

¶51 The majority's holding forces innocent parents negligently investigated for child abuse to choose between forfeiting their beloved children to the state or forfeiting their claims under chapter 26.44 RCW. Presenting parents with such a choice contravenes the statutory aim of preserving the integrity of the family.

¶52 The majority refuses to apply the jury instruction prong of the law of the case and erroneously holds the Simses cannot prove a harmful placement decision as a matter of law.

¶53 I dissent.

ALEXANDER, C.J., and CHAMBERS, J., concur with SANDERS, J.