## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75895-1-I |
| | ) | |
| Appellant, | ) | (Consolidated with |
| | ) | No. 75885-3-I) |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KEVIN LEE GARRISON, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 16, 2018 |
| | ) | |

LEACH, J. — This is the second appeal challenging Kevin Lee Garrison's sentence. Both Garrison and the State appeal his sentence. The State challenges the trial court's conclusion that a 1981 Texas conviction for voluntary manslaughter is not comparable to a "most serious offense" in Washington and, therefore, it could not sentence Garrison as a persistent offender. Garrison challenges two provisions in his judgment and sentence about a curfew and sex offender registration.

We agree that the Texas offense is not legally comparable to manslaughter in the second degree. We do not reconsider our earlier conclusion, which is the law of this case, that the Texas offense is not factually comparable to manslaughter in the first degree or assault in the second degree. For these reasons, we affirm the trial court's conclusion that it could not sentence

Garrison as a persistent offender.

We remand, however, so the trial court can strike the community custody provision imposing a curfew and amend the sex offender registration notice. We otherwise affirm.

## BACKGROUND

A jury found Garrison guilty of child molestation in the second degree, as charged.[1] At sentencing, the State presented evidence of three earlier felony convictions, including a 1981 Texas manslaughter conviction. The trial court found the Texas manslaughter conviction comparable to the Washington crime of manslaughter in the first degree, a "most serious offense" in Washington. The trial court relied on this conclusion to sentence Garrison as a persistent offender to life without the possibility of release.

On appeal, we reversed.[2] We decided that the Texas offense is not legally comparable to Washington's offense of manslaughter in the first degree or, for purposes of a "most serious offense" analysis, to Washington's assault in the second degree.[3] We also concluded that the Texas offense is not factually

---

[1] The facts of the crime are not relevant to this appeal. They are set forth in detail in our opinion in State v. Garrison, No. 71134-2-I, slip op. at 2-5 (Wash. Ct. App. Sept. 8, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/711342.pdf.
[2] Garrison, slip op. at 1.
[3] Garrison, slip op. at 23, 28-31.

comparable to these Washington offenses.[4] Finally, after noting that the parties agreed that the Texas offense is comparable to Washington's manslaughter in the second degree, we held that the offense had "washed out" and could not be counted as a "most serious offense."[5] Thus, we held that Garrison lacked the prior convictions necessary to sentence him as a persistent offender and remanded for resentencing.[6]

On remand, the State produced evidence to show that the Texas conviction had not washed out. The trial court decided, however, that the Texas offense was not comparable to second degree manslaughter in Washington and did not reach the washout issue. Because the court decided that the Texas conviction was not comparable to a "most serious offense" in Washington, it did not sentence him as a persistent offender. The court imposed a standard range sentence.

The State appeals Garrison's sentence. It claims that the trial court should have sentenced him as a persistent offender. Garrison also appeals, challenging issues related to his sentence. This court consolidated the appeals.

---

[4] Garrison, slip op. at 23, 31.
[5] Garrison, slip op. at 31-33; RCW 9.94A.525(2).
[6] Garrison, slip op. at 33.

ANALYSIS

Persistent Offender Sentencing

First, the State challenges the trial court's conclusion that Garrison's Texas manslaughter conviction is not comparable to a "most serious offense" in Washington. We agree with the trial court.

A "persistent offender" is an offender who:

> (a)(i) Has been convicted in this state of any felony considered a most serious offense; and

> (ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.525.[7]

To be a strike offense for persistent offender sentencing, an earlier conviction must be included in the defendant's offender score and must be a "most serious offense" as defined by RCW 9.94A.030.[8] To decide whether to count an out-of-state conviction, Washington courts use a two-part test.[9] A court first considers whether the offenses are legally comparable by comparing the elements of the foreign offense with those of the Washington offense.[10] When the elements of the foreign offense are broader than the Washington offense, the

---

[7] RCW 9.94A.030(38).
[8] State v. Morley, 134 Wn.2d 588, 603, 952 P.2d 167 (1998).
[9] State v. Thiefault, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).
[10] Thiefault, 160 Wn.2d at 415.

court must decide if the offenses are factually comparable.[11] The State has the burden of proving out-of-state convictions are comparable to Washington crimes.[12] We review the classification of an out-of-state conviction de novo.[13]

Here, the law of the case doctrine prevents us from reconsidering our previous holding about factual comparability of Washington's manslaughter in the first degree and assault in the second degree. We also decide that the Texas offense is not legally comparable to manslaughter in the second degree. Thus, the State has failed to show that the Texas offense was a "most serious offense." The trial court properly decided that Garrison was not a persistent offender.

*Manslaughter in the First Degree*

First, the State asks us to reconsider our earlier holding that the Texas offense is not factually comparable to manslaughter in the first degree. Following the law of the case doctrine, we do not reconsider this decision. "The law of the case doctrine provides that once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation."[14] The doctrine "seeks to promote finality and efficiency in the judicial process."[15]

---

[11] Thiefault, 160 Wn.2d at 415.
[12] In re Pers. Restraint of Cadwallader, 155 Wn.2d 867, 876, 123 P.3d 456 (2005); see also Thiefault, 160 Wn.2d at 421 (Sanders, J., concurring).
[13] State v. Beals, 100 Wn. App. 189, 196, 997 P.2d 941 (2000).
[14] State v. Schwab, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008) (citing Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)).
[15] Roberson, 156 Wn.2d at 41.

But under RAP 2.5(c)(2), "[t]he appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review." Courts have recognized two applications of this exception: (1) cases where the court's earlier decision is "'clearly erroneous'" and that "'erroneous decision would work a manifest injustice to one party'" and (2) cases where there has been some intervening change in the law.[16] Even then, application of this exception is discretionary.[17] Here, the State contends that this court's conclusions were clearly erroneous because they were the result of a misunderstanding of Texas law. We disagree.

We previously concluded that the Texas offense was not legally comparable to Washington's manslaughter in the first degree.[18] To prove manslaughter in the first degree, the State had to prove that the defendant knew of and disregarded a substantial risk that a homicide may occur.[19] Texas, by contrast, does not require the same culpable mental state.[20] The State does not

---

[16] Schwab, 163 Wn.2d at 672-73 (quoting Roberson, 156 Wn.2d at 42).
[17] Schwab, 163 Wn.2d at 672.
[18] Garrison, slip op. at 23 & n.7.
[19] RCW 9A.32.060(1)(a); RCW 9A.08.010(1)(c); State v. Gamble, 154 Wn.2d 457, 467, 114 P.3d 646 (2005).
[20] Lugo-Lugo v. State, 650 S.W.2d 72, 81-82 (Tex. Crim. App. 1983).

challenge these conclusions.[21] It asserts, however, that it introduced evidence to show factual comparability.

We previously rejected the State's factual comparability argument because we decided that the State had not introduced facts that show comparability. To decide factual comparability, courts examine the conduct underlying the offense and may consider the "facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt."[22] The State had introduced the charging information and the judgment and sentence to show that Garrison had the requisite mental state and establish factual comparability. The information alleged that Garrison "intending to cause serious bodily injury to [the victim], <u>intentionally and knowingly</u> commit[ed] an act clearly dangerous to human life, to-wit: striking the head and body of [the victim], thereby causing the death of [the victim]." (Emphasis added.) Thus, the State argued, the information established facts to show the necessary mental state. But as we

---

[21] The State cites an unpublished portion of an opinion by this court for its holding that a 1992 Texas conviction for voluntary manslaughter is comparable to Washington's manslaughter in the first degree. <u>State v. Jordan</u>, 158 Wn. App. 297, 241 P.3d 464 (2010), <u>aff'd</u>, 180 Wn.2d 456, 325 P.3d 181 (2014). But this decision is not relevant to this case for several reasons, including the fact that <u>Jordon</u> ruled on the question of <u>legal</u> comparability of manslaughter in the first degree, which is not before the court. The State conceded this issue in the first appeal. <u>See Garrison</u>, slip op. at 23 ("The State concedes on appeal that the prong of Texas's voluntary manslaughter statute under which Garrison was convicted is not legally comparable to Washington's offense of manslaughter in the first degree.").

[22] <u>Thiefault</u>, 160 Wn.2d at 415.

stated in State v. Thomas,[23] sentencing courts may not simply assume the facts in a charging document that are not directly related to the elements of the charged offense have been proved or admitted. To conclude a defendant admits to the facts in a charging document when he pleads guilty, the court must consider the effect of the guilty plea under the applicable state law.[24]

Relying on Thomas, we decided that the charging document did not establish the necessary facts.[25] We reasoned that under Texas law, a defendant does not admit the charging allegations with a guilty plea.[26] We relied on the Texas decision Menefee v. State.[27]

> In Texas, on a plea of guilty before a judge, "the defendant may consent to the proffer of evidence in testimonial or documentary form, or to an oral or written stipulation of what the evidence against him would be, without necessarily admitting to its veracity or accuracy." Menefee v. State, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Alternatively, a defendant "may enter a sworn written statement, or may testify under oath in open court, specifically admitting his culpability or at least acknowledging generally that the allegations against him are in fact true and correct." Menefee, 287 S.W.3d at 13.
>
> The State produced no evidence herein of an evidentiary stipulation or "judicial confession" in Garrison's Texas case. The Texas paperwork related to the manslaughter conviction sets forth

---

[23] 135 Wn. App. 474, 486, 144 P.3d 1178 (2006).
[24] See State v. Releford, 148 Wn. App. 478, 488, 200 P.3d 729 (2009) (concluding that an Oklahoma offense was factually comparable to a Washington offense because, in Oklahoma, a plea of guilty admits the facts pleaded in the information).
[25] Garrison, slip op. at 23-26.
[26] Garrison, slip op. at 23-26.
[27] 287 S.W.3d 9 (Tex. Crim. App. 2009).

no underlying facts of the crime that were admitted, stipulated to, or proven beyond a reasonable doubt.[28]

The State contends that our reliance on Menefee is misplaced. It cites a number of other Texas cases, which it claims stand for the proposition that a guilty plea has the effect of admitting all material facts alleged in the formal criminal charge.[29] These cases cite Ex parte Williams.[30]

Williams is consistent with Menefee and does not undermine our earlier conclusion. Williams stated, "The entry of a valid plea of guilty has the effect of admitting all material facts alleged in the formal criminal charge."[31] But Williams made this statement while explaining the federal constitutional requirement, so it does not undermine our earlier interpretation of Texas law.[32] Williams observed that Texas has an additional procedural safeguard, and its explanation about the different standards for corroborating evidence for a guilty plea supports our interpretation.[33] In a misdemeanor case, for example, a defendant admits every

---

[28] Garrison, slip op. at 25-26.

[29] E.g. Torres v. State, 493 S.W.3d 213, 217 (Tex. App. 2016); Flores-Alonzo v. State, 460 S.W.3d 197, 203 (Tex. App. 2015); Ex parte Jessep, 281 S.W.3d 675, 679 (Tex. App. 2009); Tijerina v. State, 264 S.W.3d 320, 322-23 (Tex. App. 2008). The State cites two Texas cases in particular, but they also do not support its position. First, Jessep was a habeus corpus petition where legal sufficiency of evidence could not be challenged and, thus, was not at issue. 281 S.W.3d at 680. Second, in Tijerina, the defendant had judicially confessed to the crime, thus satisfying the State's factual burden. 264 S.W.3d at 324.

[30] 703 S.W.2d 674, 682 (Tex. Crim. App. 1986).

[31] Williams, 703 S.W.2d at 682.

[32] Williams, 703 S.W.2d at 682.

[33] Williams, 703 S.W.2d at 678.

element of an offense in a guilty plea, with or without evidence to support the plea.[34] The same is true in felony cases where a defendant pleads guilty before a jury.[35] By contrast, as occurred in this case, and as Menefee explained, when a defendant enters a plea of guilty before the court, the State must offer sufficient evidence to support the judgment.[36] Williams acknowledges the same factual burden that we considered before. Thus, Williams supports rather than undermines our decision in Garrison's first appeal.

Because the State introduced no evidence of facts that were admitted, stipulated to, or proved beyond a reasonable doubt in the Texas proceeding, the State cannot establish factual comparability. The State does not show that this court's previous decision was clearly erroneous. Further, the State fails to explain how it produces a manifest injustice.[37] For these reasons, we do not review our earlier decision on factual comparability of Washington's manslaughter in the first degree.

---

[34] Williams, 703 S.W.2d at 678.
[35] Williams, 703 S.W.2d at 678.
[36] Williams, 703 S.W.2d at 678.
[37] Roberson, 156 Wn.2d at 42 (stating that "application of the [law of the case] doctrine may be avoided where the prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice to one party" (emphasis added)).

*Assault in the Second Degree*

The State also asks us to reconsider our earlier conclusion that the conviction is factually comparable to assault in the second degree. But we decline to do so for the same reason we decline to reconsider the factual comparability of manslaughter in the first degree.

We previously held that for purposes of the "most serious offense" inquiry, the Texas offense was not legally comparable to assault in the second degree in Washington.[38] We observed that the injury component of the Texas offense could be shown by a protracted loss or impairment, regardless of severity, but Washington required a substantial loss or impairment.[39] We decided that because the State produced no evidence of facts of the Texas offense that were admitted, stipulated to, or proved beyond a reasonable doubt, the State could not establish factual comparability of Washington's assault in the second degree and the Texas offense. As explained above, the State has not shown this decision was clearly erroneous.

*Manslaughter in the Second Degree*

Next, the State asserts that the Texas offense is comparable to manslaughter in the second degree. As a preliminary matter, both parties rely on the law of the case doctrine to assert that the trial court was bound by holdings in

---

[38] Garrison, slip op. at 28-31.
[39] Garrison, slip op. at 29-30.

-11-

our first opinion. Because our earlier decision does not include a holding about comparability of manslaughter in the second degree, the law of the case doctrine does not apply.

To support its position, the State relies on our statement that "[t]he parties agree that Garrison's 1981 Texas voluntary manslaughter conviction is comparable to Washington's offense of manslaughter in the second degree."[40] The State mischaracterizes this statement as a holding. We accepted the parties' agreement that the offenses are comparable to reach the washout issue on which we resolved the case.[41] The law of the case doctrine does not bind the trial court in the way the State suggests.

Garrison also contends that the law of the case doctrine binds the trial court on the issue of legal comparability of manslaughter in the second degree. We disagree with this contention as well. In our first opinion, we noted the State's concession that the Texas offense is not legally comparable to manslaughter in the first degree. In a footnote, we explained why we agreed.

> We agree. Under the Texas statute, no culpable mental state attaches to the result. By contrast, the Washington statute does require a culpable mental state—recklessness—with respect to the result. A person could be convicted of Texas voluntary manslaughter without having any culpable mental state connected to the result of death, whereas the Washington offense of first degree manslaughter requires that a person recklessly cause a

---

[40] Garrison, slip op. at 31.
[41] Garrison, slip op. at 31-33.

person's death. Thus, the Texas statute is broader than the Washington statute, and the offenses are not legally comparable.[42]

Garrison asserts that our conclusion that no mental state attaches to the result also applies to manslaughter in the second degree. But in the first appeal, we considered the culpable mental state of first degree manslaughter, which is recklessness. The culpable mental state for manslaughter in the second degree is criminal negligence.[43] Thus, we cannot rely on our limited earlier analysis of this issue and must inquire further.

Because the law of the case doctrine does not apply, we must consider whether the Texas offense is legally comparable to manslaughter in the second degree. To determine legal comparability, a court must decide if the elements of the foreign offense are substantially similar to the elements of the Washington offense.[44] Offenses are not legally comparable if the elements are different or if the Washington statute defines the offense more narrowly than the foreign statute does.[45] To decide whether it can include the conviction in the offender score analysis, the trial court must compare the elements of the out-of-state crime with the elements of potentially comparable Washington crimes as defined

---

[42] Garrison, slip op. at 23 n.7.
[43] RCW 9A.32.070(1). "[C]riminal negligence is distinct from recklessness." State v. Smith, 31 Wn. App. 226, 230, 640 P.2d 25 (1982).
[44] Thiefault, 160 Wn.2d at 415.
[45] State v. Ford, 137 Wn.2d 472, 479, 973 P.2d 452 (1999); In re Pers. Restraint of Lavery, 154 Wn.2d 249, 255-56, 111 P.3d 837 (2005).

on the date the out-of-state crime was committed.[46] To decide if the conviction is a "most serious offense," the court compares the foreign offense to Washington offenses that would have constituted "most serious offenses" at the time that the defendant committed the offense for which he is being sentenced.[47] Here, the relevant language is substantially the same at the time Garrison committed the Texas offense and current offense. Thus, only one legal comparability analysis is required.[48]

In 1981, the Texas offense of "voluntary manslaughter" was defined as follows: "A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause."[49] The referenced "Section 19.02" required the State to prove that the defendant intended to "cause serious bodily injury" and committed an act "clearly dangerous to human life."[50] In Lugo-Lugo v. State,[51] Texas's highest criminal court clarified that the State need prove only that the act was objectively clearly dangerous to human life and was done with

[46] Lavery, 154 Wn.2d at 255.
[47] State v. Varga, 151 Wn.2d 179, 191, 86 P.3d 139 (2004).
[48] Compare RCW 9A.08.010(1)(d) with former RCW 9A.08.010(1)(d) (1975) and RCW 9A.32.070(1) with former RCW 9A.32.070(1) (1975) (adding gender neutral language).
[49] Former TEX. PENAL CODE ANN. § 19.04(a) (1973).
[50] Former TEX. PENAL CODE ANN. § 19.02(a) (1973).
[51] 650 S.W.2d 72, 81-82 (Tex. Crim. App. 1983).

intent to cause serious bodily injury. The State did not need to prove that the defendant knew the act was clearly dangerous to human life. [52]

For Washington's manslaughter in the second degree, however, the culpable mental state attaches to the result. In Washington, "[a] person is guilty of manslaughter in the second degree when, with criminal negligence, he or she causes the death of another person."[53] A person

> acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.[54]

Division Two has reasoned that criminal negligence for second degree manslaughter requires failure to be aware of a substantial risk that a homicide may occur.[55] As Division Two observed, this is consistent with the reasoning of our Supreme Court in State v. Gamble.[56] Gamble considered the mens rea element of first degree manslaughter.[57] First degree manslaughter requires that

---

[52] Lugo-Lugo, 650 S.W.2d at 81-82.

[53] RCW 9A.32.070(1).

[54] RCW 9A.08.010(d).

[55] State v. Latham, 183 Wn. App. 390, 405-06, 335 P.3d 960 (2014) (assuming without holding that criminal negligence for second degree manslaughter required a failure to be aware of a substantial risk that a homicide may occur) (quoting State v. Henderson, 180 Wn. App. 138, 149, 321 P.3d 298 (2014)); Gamble, 154 Wn.2d at 467-68.

[56] 154 Wn.2d 457, 467-68, 114 P.3d 646 (2005).

[57] Gamble, 154 Wn.2d at 467-68.

the defendant "recklessly cause[d] the death of another person."[58] A person acts reposition reckless when he "knows of and disregards a substantial risk that a wrongful act may occur."[59] Because the "wrongful act" in manslaughter in the first degree is homicide, Gamble reasoned that Washington law required the State to prove that the defendant "'[knew] of and disregard[ed] a substantial risk that a [homicide] may occur.'"[60] We apply this logic to conclude that to prove manslaughter in the second degree, the State must show that the defendant failed to be aware of a substantial risk that a homicide may occur.

Because Washington's manslaughter in the second degree requires a culpable mental state in connection with the homicide and the Texas offense does not, Washington law is narrower and the offenses are not legally comparable.[61]

The State passingly asserts that the Texas offense is factually comparable to manslaughter in the second degree in Washington. But, as we have explained, the State introduced no facts that were admitted, stipulated to, or

---

[58] RCW 9A.32.060(1)(a).

[59] RCW 9A.08.010(1)(c).

[60] Gamble, 154 Wn.2d at 467-68 (alterations in original) (quoting RCW 9A.08.010(c)).

[61] Garrison also contends that the Texas conviction is not comparable to the Washington offense of second degree manslaughter because Texas law is broader on the element of causation. But we need not consider this argument because we decide that the offenses are not comparable on a difference basis.

proved beyond a reasonable doubt. Thus, we have no information on which we could base a conclusion that the offenses are factually comparable.

Community Custody Condition

Garrison challenges the following community custody condition: "Abide by a curfew of 10pm – 5am unless directed otherwise. Remain at registered address or address previously approved by CCO [community custody officer] during these hours."[62] Garrison contends and the State concedes that the court did not have statutory authority to impose this condition because it is not crime-related. The Sentencing Reform Act of 1981[63] authorizes the trial court to impose "crime-related prohibitions and affirmative conditions" as part of a sentence.[64] A condition is "crime-related" if it "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[65] "This court reviews a trial court's imposition of crime-related community custody conditions for abuse of discretion."[66] Here, the crime occurred in the home where Garrison resided. Thus, the curfew is not directly

---

[62] Garrison raises this challenge for the first time on appeal. But we permit defendants to challenge illegal or erroneous sentences for the first time on appeal. State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

[63] Ch. 9.94A RCW.

[64] State v. Johnson, 180 Wn. App. 318, 325, 327 P.3d 704 (2014) (quoting former RCW 9.94A.505(8) (1975), recodified as RCW 9.94A.505(9)).

[65] RCW 9.94A.030(10).

[66] State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

related to the crime. We agree that the trial court abused its discretion when it imposed this prohibition.

## Sex Offender Registration

Next, Garrison contends that the trial court improperly linked the end of Garrison's sex offender registration requirement to action by the court or sheriff's office. A person convicted of a sex offense must register with the county sheriff.[67] Because he was convicted of a class B felony, Garrison's duty to register ends 15 years after release from confinement if he spends 15 years in the community without being convicted of a disqualifying offense.[68] However, the court included the following statement in the notice of registration requirements, appendix J to the judgment and sentence: "Your duty to register does not end until you have obtained a court order specifically relieving you of the duty to register or you have been informed in writing by the sheriff's office that your duty to register has ended."

As Garrison asserts and the State admits, under RCW 9A.44.140(2), the duty to register ends automatically by operation of law after 15 years without committing a disqualifying offense. Courts are required to notify offenders of the

---

[67] RCW 9A.44.130(1).
[68] RCW 9A.44.086(2) ("Child molestation in the second degree is a class B felony."); former RCW 9A.44.140(2) (LAWS OF 2010, ch. 267 § 4).

registration requirement.[69] When they fail to provide this notice, the remedy is to provide the notice promptly upon discovery of the oversight.[70] We hold that the trial court must also correct an error in the notice by promptly providing accurate notice to the defendant. The trial court should correct this inaccuracy on remand.

## CONCLUSION

We affirm in part and reverse in part. The trial court correctly decided that the Texas offense is not legally comparable to a most serious offense in Washington and cannot be used as a predicate offense for the purpose of a persistent offender sentence. We reverse on the community custody and sex offender registration issues, however, and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Mann, A.C.J._          _Schindler, J._

---

[69] "The court shall provide written notification to any defendant charged with a sex offense or kidnapping offense of the registration requirements of RCW 9A.44.130. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant." RCW 10.01.200.

[70] State v. Munds, 83 Wn. App. 489, 494-95, 922 P.2d 215 (1996); State v. Clark, 75 Wn. App. 827, 833, 880 P.2d 562 (1994).