[No. 38253.    Department Two.    June 2, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. EARLE GUSTAV MILBRADT, *Appellant*.*

*James B. Gober* and *Ray Hayes, Jr.*, for appellant (Appointed counsel for appeal).

*Jerry Moore* and *Gilbert C. Valley*, for respondent.

PER CURIAM.—After a day of considerable libation, Earle Gustav Milbradt encountered an acquaintance, one Robert Kennedy, in a Winlock tavern. The two men joined forces

*Reported in 415 P.2d 2.

and continued their patronage of the tavern until about 1:30 a.m., taking with them when they left a six-pack carton of beer. While engaged in consuming the six-pack during a drive around Winlock, defendant Milbradt became ill and requested his companion, Mr. Kennedy, to take him to his brother's residence on the outskirts of town. Apparently, the brother was absent on his honeymoon, and he had previously offered the defendant the use of the premises. According to the defendant's testimony, he recalls being helped into the house by Mr. Kennedy, where he partly undressed and flopped on the bed, face down. He awakened from the effects of alcohol to find that Mr. Kennedy was attempting to perform an act of oral sodomy upon him. Defendant Milbradt jumped from the bed and turned on the lights. In the course of the ensuing struggle with Mr. Kennedy, the defendant took a .30-.30 rifle from a closet and a box of cartridges from a dresser drawer. Although he admonished Mr. Kennedy to leave him alone, the latter persisted, stating "I love you and I know you love me," and insisted upon kissing the defendant. Defendant thereupon shot and killed Mr. Kennedy. At the trial the defendant testified that he intended only to fire the rifle into the ceiling to scare Kennedy, but, because of his inebriated condition or otherwise, he was unable to control the rifle, with the result that Mr. Kennedy was fatally shot. Shortly after these events transpired, the defendant turned himself in to the Winlock town marshal.

The defendant was subsequently charged with first degree murder and convicted of second degree murder.

In this appeal the appellant's four assignments of error raise the following issues:

1. Whether the coroner's testimony at the trial was so prejudicial as to deprive the defendant of a fair trial.

2. Whether it was error for the trial court to instruct the jury that the defendant could not use a deadly weapon to resist an attempt to commit the sexual act of fellatio upon him unless he honestly believed and had reasonable grounds to believe that he was in imminent danger of death or great bodily harm.

3. Whether alleged misconduct of the prosecuting attorney and the deputy prosecuting attorney in their remarks to the jury deprived the defendant of a fair trial.

■ The assignments of error will be dicussed seriatim. The coroner, while testifying, was asked if he recalled the day of August 1, 1964; the following colloquy ensued.

> A. Vividly. Q. You say vividly, why vividly recall the date? A. Because, such a tragic affair. Q. Could you explain what you mean by tragic affair? Let me caution you that you should not make any statement as to what you think, only what you know of your own knowledge and what you observed and why do you recall the date? A. This case of homicide, apparently cold-blooded murder.

The prosecuting attorney promptly requested that this gratuitous, inflammatory and improper statement by the coroner be struck, and the trial judge appropriately instructed the jury to disregard the coroner's statement. It is our judgment that the instruction given to the jury by the trial judge negatived and effectively corrected any prejudice against the defendant which might be attributed to the statement made by the coroner.

Instruction 20, the subject of appellant's second and third assignments of error, reads as follows:

> While a person is not bound to retreat from a place where he has a right to remain and may lawfully repel a threatened assault, and to that end may use force enough to repel the assailant, yet he has no right to repel the threatened assault with naked hands by the use of a deadly weapon in a deadly manner, unless he honestly believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm.

Appellant's defense of justifiable homicide was presented to the jury by the trial court in instructions 10 and 22, reading as follows:

INSTRUCTION 10:

> The killing of another is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.

The killing of another is justifiable when done in the lawful defense of the slayer when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer and there is imminent danger of such design being accomplished, or when the killing of another is done in the actual resistance of an attempt to commit a felony upon the slayer in his presence, or upon or in a dwelling, or other place of abode, in which he is.

INSTRUCTION 22:

You are instructed that the statutes of the State of Washington define the crime of sodomy in part as follows:

Every person who carnally knows any male person with the mouth or tongue shall be guilty of sodomy.

The crime of sodomy is a felony.

It is our judgment that these three instructions, considered together, are a correct statement of the law, and properly presented appellant's defense of justifiable homicide to the jury.

In appellant's fourth assignment of error he accused the prosecuting attorney and his deputy of making highly prejudicial references to the alleged homosexual tendencies of the defendant. However, defense counsel opened up and explored this subject in advance of any comment on this aspect of the matter by the prosecuting attorneys by calling the defendant's psychiatrist as a witness.

Finding no merit in the assignments of error, for the reasons briefly stated above, it is our conclusion that the judgment of the trial court should be affirmed. It is so ordered.