COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.    34634-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER AMENDING OPINION |
| | ) | |
| KARION H. THOMAS, | ) | |
| | ) | |
| Appellant. | ) | |

IT IS ORDERED the opinion filed January 30, 2018, is amended as follows:

Starting at the top of page ten that reads:

. . . .

(c) Consider any predisposition reports.

In *State v. J.A.B.*, 98 Wn. App. 662, 991 P.2d 98 (2000), this court rejected a juvenile

offender's argument that basing his standard range on the criminal history in the

disposition report violated his right to due process.

CONCLUSION

We deny Karion Thomas any relief on appeal.  We grant Karion Thomas'

appellate counsel's motion to withdraw.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

shall be amended to read:

Karion Thomas forwards *State v. Huddleston*, 80 Wn. App. 916, 912 P.2d 1068 (1996), wherein the appellant also contends that his trial counsel performed inadequately by reason of failing to argue defense of others. Thomas asks that we remand his case for a new trial as this court did in *Huddleston*. Nevertheless, Thomas fails to note that this court rejected Kevin Huddleston's claim of ineffective assistance of counsel and remanded for a new trial based on the trial court's failure to apply the correct definition of "great bodily harm" to the charges of assault.

## CONCLUSION

We affirm Karion Thomas' conviction for second degree assault.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

PANEL: Judges Fearing, Lawrence-Berrey, and Pennell

FOR THE COURT:

_____
GEORGE B. FEARING, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  34634-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KARION H. THOMAS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court convicted the minor, Karion Thomas, of second

degree assault.  We affirm the conviction.

FACTS

On the evening of December 11, 2015, 16-year-old Karion Thomas visited the

home of his friend Ruben Lizarraga.  Ruben's father, Joseph Lizarraga, and stepmother,

Erica Cauffman, left Ruben and Thomas home alone for several hours.  When the couple

returned home around 10:30 p.m., they discovered juveniles partying and consuming

alcohol.  Some guests were intoxicated.

Joseph Lizarraga confronted his son Ruben, who stood on the back patio.  Joseph

and his son entered the home, and the two engaged in a physical fight inside the kitchen.

Ruben punched Joseph in the mouth. Joseph retaliated, struck Ruben, and Ruben fell to the kitchen floor. A lady friend of Ruben's attempted to intervene and jumped on Joseph's back. Erica Cauffman pushed the lady out the front door.

Joseph Lizarraga and son Ruben took the fight into the backyard. Ruben hit his father three times, after which Joseph punched Ruben and knocked him to the ground.

Defendant Karion Thomas remained inside the house while Joseph Lizarraga and Ruben fought outside. After the altercation ended and Ruben lay on the ground, Thomas exited the residence. Thomas then argued with Joseph Lizarraga and sought to fight the father. An angry Thomas threatened to harm Joseph. Joseph spoke into Thomas' face and told Thomas to leave the property. Joseph Lizarraga turned around, Thomas came from behind Joseph, and Thomas wrapped an arm around Joseph's neck. Thomas pressed against Joseph Lizarraga's throat and constricted his breathing. Another juvenile, Christopher Darion Simon, pulled Thomas off Joseph Lizarraga. Lizarraga believed he would have lost consciousness if Simon had not rescued him.

Erica Cauffman called 911. All juveniles attending the party, including Ruben Lizarraga and Karion Thomas, fled the scene before police arrived.

PROCEDURE

The State of Washington, in juvenile court, charged Karion Thomas, under RCW 9A.36.021(1)(g), with one count of second degree assault of Joseph Lizarraga by strangulation or by suffocation. The case proceeded to a bench trial.

2

During trial, Joseph Lizarraga testified that he spoke to a police officer the night of the assault, and, on the next day, he gave a written statement. On cross-examination, defense counsel asked Lizarraga if he told the officer that night about Thomas choking him, and Lizarraga replied in the affirmative.

Ruben Lizarraga testified that after his father knocked him to the ground outside, he did not see any activity. Ruben testified he did not see Karion Thomas attack his father.

Darion Simon testified during trial that Karion Thomas remained in the house while Joseph and Ruben Lizarraga fought outside. Simon testified that Thomas exited the home after the ending of the father-son struggle. According to Simon, he restrained Thomas because an angry Thomas wanted to fight Joseph Lizarraga after Joseph hurt Ruben.

In Karion Thomas' case in chief, defense counsel called Richland Police Officer John Raby, who responded to the scene on the night in question. Officer Raby testified that he journeyed to the Lizarraga home to address a domestic altercation between a father and son. Raby observed that Joseph Lizarraga suffered a bloody lip but no other injuries. The officer spoke with Joseph and Erica Cauffman, and, to his recollection, neither mentioned Thomas fighting or choking anyone.

The State called Joseph Lizarraga as a rebuttal witness. Over defense objections of hearsay and improper rebuttal, the trial court allowed Lizarraga to testify regarding the

written statement he proffered to law enforcement the day after the incident. Lizarraga

testified he wrote: "Thomas grabbed me and choked me, hold [sic] me and started

choking me and another boy, [Simon] had grabbed [Thomas] to get him off of me."

Report of Proceedings at 69.

The trial court found Karion Thomas guilty of second degree assault.

LAW AND ANALYSIS

On appeal, Karion Thomas contends the trial court erred when overruling his

objection to the hearsay and rebuttal testimony when Joseph Lizarraga read from his

written statement given to law enforcement. Thomas also argues his trial counsel

performed ineffectively when failing to raise the defense of the defense of others.

Hearsay Testimony of Joseph Lizarraga

Karion Thomas assigns error to the trial court's permitting Joseph Lizarraga to

read his prior statement to law enforcement. He claims the testimony constitutes

inadmissible hearsay. ER 801(d) and another *Thomas* case controls this assignment of

error. The rule reads:

> **(d) Statements Which Are Not Hearsay.** A statement is not
> hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial
> or hearing and is subject to cross examination concerning the statement,
> and the statement is (i) inconsistent with the declarant's testimony, and was
> given under oath subject to the penalty of perjury at a trial, hearing, or other
> proceeding, or in a deposition, or (ii) consistent with the declarant's
> testimony and is offered to rebut an express or implied charge against the

declarant of recent fabrication or improper influence or motive, or (iii) one
of identification of a person made after perceiving the person. . . .

ER 801.

At trial, Karion Thomas challenged the credibility of Joseph Lizarraga by

suggesting that Lizarraga never reported being choked.  This challenge freed Lizarraga to

testify to his prior statement.

In *State v. Thomas*, 150 Wn.2d 821, 865, 83 P.3d 970 (2004), the court held that, if

cross-examination raises an inference that the witness changed her story in response to an

external pressure, then whether that witness gave the same account of the story prior to

the onset of the external pressure becomes highly probative of the veracity of the witness'

story given while testifying.  The proponent of the testimony may then show that the

witness' prior consistent statement was made before the witness' motive to fabricate

arose in order to show the testimony's veracity.

Improper Rebuttal Testimony

Karion Thomas also characterizes Joseph Lizarraga's reading of his written

statement as improper rebuttal.  He argues, based on *State v. White*, 74 Wn.2d 386, 444

P.2d 661 (1968), that the State may employ rebuttal testimony only to answer new issues

raised by the defense in the defense's case.  He adds that the State may not withhold

testimony in its case in chief so that it may later present the evidence cumulatively after

completion of the defense's testimony.  This second argument contains an internal

5

inconsistency since, if the State withheld evidence during its case in chief, the evidence would not be cumulative if presented in rebuttal.

Rebuttal evidence is admitted to enable the State to answer new matter presented by the defense. *State v. White*, 74 Wn.2d at 394. Genuine rebuttal evidence does not reiterate evidence presented in chief but consists of evidence offered in reply to new matters. *State v. White*, 74 Wn.2d at 394-95. The law does not permit the State to withhold substantial evidence supporting issues on which it carries the burden of proving merely in order to present this evidence cumulatively at the end of defendant's case. *State v. White*, 74 Wn.2d at 395. The trial court may encounter difficulty in ascertaining whether the rebuttal evidence replies to new matters established by the defense. *State v. White*, 74 Wn.2d at 394-95. Frequently true rebuttal evidence overlaps or coalesces with the evidence in chief. *State v. White*, 74 Wn.2d at 395. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's discretion, and error in denying or allowing it can be predicated only on a manifest abuse of that discretion. *State v. White*, 74 Wn.2d at 395.

We reject Karion Thomas' argument because the State was not permitted to ask Joseph Lizarraga to read from his statement to law enforcement during the State's case in chief. The statement constituted inadmissible hearsay until the defense challenged Lizarraga's story during the defense's case in chief when Officer Raby stated that he did not recall Lizarraga complaining of being choked. The reading from the prior statement

6

was permissible only after Thomas attacked the credibility of Lizarraga during Thomas'

case by noting that Lizarraga did not purportedly report any injury to his throat. Thus,

reading of the statement served proper rebuttal testimony. The trial court abused no

discretion.

## Ineffective Assistance of Counsel

Karion Thomas argues that his trial counsel unreasonably failed to assert the

defense of others as a defense in his prosecution. This argument requires us to analyze

rules of ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution and article I, section 22 of

the Washington Constitution guarantee the right to effective assistance of counsel.

*Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Washington courts have

not extended the protections of the state constitution beyond the protections afforded by

the United States Constitution. Instead, state decisions follow the teachings and rules

announced in the United States Supreme Court's seminal decision of *Strickland v.

Washington*, 466 U.S. 668 (1984). An accused is entitled to more than a lawyer who sits

next to him in court proceedings. In order to effectuate the purpose behind the

constitutional protection, the accused is entitled to effective assistance of counsel.

*Strickland v. Washington*, 466 U.S. at 686.

7

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

For the deficiency prong of ineffective assistance of counsel, this court gives great deference to trial counsel's performance and begins the analysis with a strong presumption that counsel was effective. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Deficient performance is performance that fell below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The appellant bears the burden to prove ineffective assistance of counsel. *State v. McFarland*, 127 Wn.2d at 335. Effective representation entails certain basic duties, such as the overarching duty to advocate the defendant's cause and the more particular duty to assert such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington*, 466 U.S. at 688; *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 100, 351 P.3d 138 (2015).

An attorney's failure to recognize and raise an affirmative defense can fall below the constitutional minimum for effective representation. *State v. Coristine*, 177 Wn.2d 370, 379, 300 P.3d 400 (2013). Nevertheless, if insufficient evidence supports a defense,

counsel cannot be faulted for failing to raise the defense. *State v. Flora*, 160 Wn. App. 549, 556, 249 P.3d 188 (2011). So we must decide if evidence supported a defense of defense of others for Karion Thomas.

In Washington, one may lawfully use force in defense of others when one has a reasonable belief that the person being protected is in imminent danger. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). As the rule states, the use of force is not lawful unless the actor reasonably believes that the danger is imminent. The undisputed evidence is that the fight between father and son Lizarraga ended before Karion Thomas left the house and ran to the backyard. Thomas took no steps to end the fight or protect his friend, Ruben Lizarraga. Thomas, without provocation, challenged Joseph Lizarraga to a fight, and, when Joseph turned his back, Thomas choked Joseph.

Karion Thomas claims that Ruben Lizarraga's friends grew concerned for Ruben's safety. Nevertheless, the trial record cited by Thomas for this factual allegation only establishes that one friend held concern for Ruben's safety while Ruben and his father fought in the kitchen. No one testified to concern for Ruben's safety after Joseph Lizarraga and Ruben went to the backyard.

Karion Thomas emphasizes Joseph Lizarraga's testimony that he understood that Karion Thomas sought to protect his friend, Ruben. This testimony does not provide any factual support, however, for a conclusion that Thomas attacked Lizarraga at a time that Ruben was in imminent need of protection.

. . . .

(c) Consider any predisposition reports.

In *State v. J.A.B.*, 98 Wn. App. 662, 991 P.2d 98 (2000), this court rejected a juvenile

offender's argument that basing his standard range on the criminal history in the

disposition report violated his right to due process.

## CONCLUSION

We deny Karion Thomas any relief on appeal.  We grant Karion Thomas'

appellate counsel's motion to withdraw.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

10