IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79675-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOEL EDWARD PAYNE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — This is the second appeal arising from Joel E. Payne's convictions for assault in the first degree while armed with a deadly weapon and malicious harassment stemming from the 2014 stabbing of Randelle Atkins. In Payne's first appeal, we reversed and remanded because Payne was denied his right to counsel in post-trial proceedings and the court erred in calculating his offender score. On remand, the court appointed counsel for Payne and after conducting several hearings on the merits, denied his motion to set aside the verdict and resentenced Payne. Payne now appeals the court's denial of his post-judgment motion challenging the verdict. Finding no error, we affirm.

FACTS

According to the testimony at Payne's trial, Atkins went shopping alone at Southcenter Mall on October 10, 2014. After leaving the mall, he decided to stop at a small convenience store before returning to his vehicle. As he walked to the

store, Atkins noticed a man walking toward him wearing a mask that completely covered his face. Atkins and the man passed within a foot of each other.

When he left the store, the same man, who was now wearing the mask on top of his head, approached Atkins. Atkins noticed that the man's face was bruised and "kind of messed up." The man, later identified as Payne, accused Atkins of previously stealing from him and began to loudly yell racial slurs. Atkins was using his telephone, ignored Payne, and attempted to walk past him. Payne followed him. Then, Atkins, who was holding his phone in one hand and a shopping bag in the other, felt that someone was about to touch him and turned around, raising his arms to try to create space. Payne stabbed Atkins in the chest and then fled on foot.

Atkins did not immediately realize he had been stabbed, but when he turned and entered an AT&T store, people looked at him and screamed. He looked down and saw that he was bleeding heavily. Atkins dropped the items he was carrying and asked bystanders to call the police. An ambulance arrived and medics inserted a chest tube into Atkins' lung at the scene and transported him to the hospital.

Shortly after, a Sears employee found Payne hiding in a storeroom. Payne explained that he was hiding from a man who was armed with a gun and asked the employee not to tell anyone he was there. The employee noticed bruises and cuts on Payne's face. The employee notified a loss prevention officer, who called the police. Several officers gathered to search the storeroom. Following a brief physical confrontation, they arrested Payne. In a search incident to his arrest, they

2

found two knives in his pocket. One of the knives appeared to have blood on the blade. Police also found a backpack in the storeroom containing various items, including a mask.

Detectives searched the area outside the store where the stabbing occurred and found, among other things, a ring that Atkins had been wearing at the time of the incident. The detectives photographed, packaged, and placed the ring in evidence along with other items from the scene. Police interviewed Atkins at the hospital shortly after the incident, photographed his hands, and collected a Deoxyribonucleic acid (DNA) sample. A forensic scientist later analyzed the blood from the knife and determined that it matched the DNA from a sample taken from Atkins. The photographs did not depict any injuries to Atkins' hands.

About a week after the stabbing, Atkins called the lead detective and asked if his cell phone, eye glasses, and ring could be returned to him. Because the items had been photographed and he concluded that they did not have any evidentiary value, the detective returned the items to Atkins.

Payne brought a pretrial motion to dismiss based on the State's release of the ring to the victim before Payne had an opportunity to have it tested for the presence of DNA. Payne argued that the presence of his own DNA on the ring would have supported his claim of self-defense by refuting Atkins' claim that he never hit him. The court denied the motion. In February 2016, a jury convicted Payne as charged of assault in the first degree and malicious harassment. The court imposed a standard range sentence.

Payne appealed his convictions and sentence and claimed 1) the release of the ring to Atkins deprived him of the opportunity to test the ring and violated his right to due process; 2) the court violated his right to a public trial; 3) he was deprived of the right to counsel in post-trial proceedings; and 4) the trial court erred in calculating his offender score. We rejected Payne's due process and public trial claims, but agreed that his offender score was miscalculated and that he was deprived of the right to counsel. We reversed and remanded for post-trial proceedings with appointed counsel.

On remand, Payne filed a motion for arrest of judgment and/or a new trial. He raised over thirty grounds for relief, including an alleged due process violation related to the failure to preserve the ring as evidence, insufficiency of the evidence, and numerous claims of ineffective assistance of counsel, prosecutorial misconduct, and trial court error. Over the course of two hearings, the court denied each of Payne's motions. The court then resentenced Payne and again imposed a standard range sentence based on a reduced range. He timely appealed.

ANALYSIS

I.    Due Process

Payne asks this court to revisit our decision in his prior appeal. Based on the law of the case doctrine, we decline to do so.

In Payne's first appeal, we concluded that, although the police initially placed the victim's ring into evidence, the release of the ring to Atkins before trial did not violate Payne's right to due process. See State v. Payne, No. 75503-0-I at

slip op. at 3 (Wash. Ct. App. March 26, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/755030.pdf. We assumed for purposes of our analysis that the ring was "potentially useful evidence"—meaning that it "'could have been subjected to tests, the results of which might have exonerated the defendant.'" State v. Groth, 163 Wn. App. 548, 557, 261 P.3d 183 (2011) (quoting Arizona v. Youngblood, 488 U.S. 51, 57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). A police officer's failure to preserve such evidence violates due process only if the defendant can show bad faith, an inquiry that turns on the officer's knowledge of the exculpatory value of the evidence at the time it is lost or destroyed. See Groth, 163 Wn. App. at 588; State v. Burden, 104 Wn. App. 507, 512, 17 P.3d 1211 (2001). We held that Payne failed to meet his burden to prove that the lead detective was aware of the ring's exculpatory value and therefore acted in bad faith when he released it to its owner. Payne, slip op. at 3.

Having determined a legal issue on appeal, we will not ordinarily reconsider the issue in a later appeal in the same litigation. "In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). The doctrine promotes finality and efficiency. State v. Schwab, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008).

The rule, codified by RAP 2.5(c)(2), is discretionary. Roberson, 156 Wn.2d at 42. The rule codifies "two historically recognized exceptions to the law of the case doctrine that operate independently." Id. "First, application of the doctrine

may be avoided where the prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice to one party." Id. "Second, application of the doctrine may also be avoided where there has been an intervening change in controlling precedent between trial and appeal." Id. There is also authority to suggest that we may reconsider a legal issue in a subsequent appeal if there is a "'substantial change in the evidence at a second determination of the cause.'" Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965).

Neither party addresses this doctrine.[1] Consequently Payne does not address the circumstances under which we may exercise our discretion to revisit a legal determination in a subsequent appeal. Nevertheless, at the superior court hearing on Payne's post-trial motion, he argued that our decision did not foreclose renewal of his due process claim because of new evidence that was not before this court. Specifically, in support of his motion for a new trial on remand, Payne supplied evidence of the specific policies that governed the Tukwila Police Department's collection, preservation, and release of evidence at the time of the crime. According to these policies, returning the ring to Atkins before the matter was adjudicated at trial required approval of the prosecuting attorney's office and documentation. The State does not appear to dispute that the detective did not comply with these policies when he released the ring.

---

[1] The State asserts that either res judicata or collateral estoppel precludes Payne from raising the issue on appeal regarding the failure to preserve evidence. Because we apply the law of the case, we need not address the applicability of either of these "closely related" doctrines. Roberson, 156 Wn.2d at 41.

The new evidence of the police department's policies does not warrant reconsideration of Payne's claim. In rejecting his claim in the first appeal, we noted Payne's failure to demonstrate a violation of a particular regulation or explicit policy. But as our decision makes clear, this fact was not critical to our determination. As we explicitly observed, a loss or destruction of evidence that is in violation of clear policy, does not, of itself, constitute bad faith. Payne, slip op. at 3; See Groth, 163 Wn. App. at 559.

The basis for our decision was the lack of evidence in the record of bad faith. It is well established that as to potentially useful evidence, we apply the analysis of the United States Supreme Court, which requires a defendant to show that the failure to preserve evidence was more than merely negligent and provides that the presence or absence of bad faith hinges on "knowledge of the [apparent] exculpatory value of the evidence." Youngblood, 488 U.S. 56, n.* (alterations in original). For example, Youngblood involved the police's handling of a rape victim's clothing. Id. at 53-54. Semen stains on the clothing could have possibly exonerated the defendant had the clothes been tested sooner or been refrigerated. Id. at 57-58. However, the Court held that the police actions did not amount to bad faith because failure to perform tests was, at worst, negligent. Id. at 58. In other words, the police's failure to realize the potential usefulness of the evidence before it was destroyed is insufficient to show bad faith.

Payne challenges our determination that the evidence does not show that the detective was aware of the potentially exculpatory value of the evidence when he returned it to the victim. But his arguments in this regard are essentially the

same as those we considered and rejected when we resolved his first appeal. Having decided Payne's due process claim, we see no clear error in our previous decision which might indicate injustice and no reason to depart from our reasoning. We therefore decline to revisit his claim.

## II.     Sufficiency of the Evidence

Payne challenges the sufficiency of the evidence to support his conviction of assault in the first degree.

To resolve such a challenge, we view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. Id. We deem circumstantial and direct evidence equally reliable. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Nevertheless, inferences based on circumstantial evidence must be reasonable and not based on speculation. State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). The trier of fact, not the reviewing court, resolves credibility determinations. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

First degree assault is an alternative means crime and here, the State charged Payne with two alternative means. As charged, the State was required to prove that, "with intent to inflict great bodily harm," Payne either (1) assaulted Atkins with a "deadly weapon or by a force or means likely to produce great bodily

harm or death;" or (2) committed an assault that "resulted in the infliction of great bodily harm." RCW 9A.36.011(1)(a), (c). Great bodily harm is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). When the State charges alternative means, the jury must unanimously agree that the crime occurred but need not be unanimous as to which of the alternative means has been proved so long as sufficient evidence supports each alternative. State v. Woodlyn, 188 Wn.2d 157, 164, 392 P.3d 1062 (2017).

Payne claims the State failed to prove that he acted with intent to inflict great bodily harm. He points out that the stabbing happened quickly. And he claims that evidence of a single strike with a knife is not indicative of intent to cause great bodily harm.

In determining whether the evidence was sufficient to prove the requisite intent, the "jury may consider the manner in which the defendant exerted the force and the nature of the victim's injuries to the extent that it reflects the amount or degree of force necessary to cause the injury." State v. Pierre, 108 Wn. App. 378, 385, 31 P.3d 1207 (2001). While specific intent may not be presumed, the trier of fact may infer it "as a logical probability from all the facts and circumstances." State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). All details of the case may indicate intent, including the manner and act of inflicting the wound, and also the nature of the relationship and any prior threats. State v. Ferreira, 69 Wn. App. 465, 468-69, 850 P.2d 541 (1993).

9

We have previously held that stabbing a person in the chest falls within the "statutory standard of conduct 'likely to produce great bodily harm or death.'" State v. Langford, 67 Wn. App. 572, 587, 837 P.2d 1037 (1992) (quoting RCW 9A.36.011(1)(a)). We have also held that a rational jury could find that the defendant acted with intent to cause great bodily harm when he stabbed several people "in the back, chest or stomach," and one of those people required multiple surgeries to repair the damage. State v. Huddleston, 80 Wn. App. 916, 922, 912 P.2d 1068 (1996).

Likewise here, the evidence is sufficient to permit an inference of the intent to inflict great bodily harm. The State's evidence showed that after yelling racial epithets and accusing Atkins of robbing him, Payne plunged a knife into Atkins' chest with enough force to penetrate the chest cavity, narrowly missing his heart. His conduct was indicative of intent to cause death or serious permanent injury. While the knife missed Atkins' heart, he received prompt treatment, and he apparently did not suffer a permanent impairment, this outcome was not inevitable. Atkins' survival and recovery does not negate Payne's apparent intent.

Payne also challenges the sufficiency of the evidence to support one of the charged alternative means of assault. Specifically, he challenges the sufficiency of the evidence to establish that he inflicted great bodily harm upon Atkins. He argues that the only injury Atkins sustained, a collapsed lung, was treatable and did not create a "probability of death." RCW 9A.04.110(4)(c). He further argues that the injuries the treating physician characterized as potentially fatal or likely to

lead to permanent impairment, were merely injuries Atkins might have suffered had the knife struck Atkins in a slightly different location.

But viewing the evidence in the light most favorable to the State, as we must, we conclude it was sufficient to support the jury's determination that the assault resulted in great bodily harm. The treating physician testified that Atkins suffered a stab wound to the chest that was six centimeters deep, punctured his lung, and placed him at risk for losing a lung. The injury created a significant risk of hemorrhage and "massive" blood loss. The physician explained that a penetrative injury that endangers the heart and/or significant blood vessels is a potentially fatal injury. He also testified that the critical factor in penetrative injuries is the depth of penetration, and in this case, the depth was great enough to cause serious injury. He specifically agreed that a stab wound to the chest area creates a probability of death. The logical inference from all the evidence is that the injury inflicted here, a deep stab wound in the chest cavity, resulted in great bodily harm by creating a probability of death. Payne's challenge to the sufficiency of the evidence fails.

III.     Interest on Legal Financial Obligations

The sentencing court imposed legal financial obligations consisting of a $500 victim penalty assessment and restitution. Under RCW 10.82.090(1), restitution bears interest that accrues from the date of the judgment but, as of June 7, 2018, other legal financial obligations do not accrue interest.

11

Payne claims that his judgment and sentence requires interest accrual on all legal financial obligations imposed and therefore must be amended. We disagree. Payne's judgment and sentence provides that "[f]inancial legal obligations shall bear interest pursuant to RCW 10.92.090." The court also checked a box that provides, "[i]nterest is waived except with respect to restitution." Reading the language of Payne's judgment and sentence in conjunction with the statute, it is clear that interest will accrue only on the restitution he was ordered to pay.

Affirmed.

WE CONCUR: